IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN WILLIAM SCHARNHORST, III                              PLAINTIFF

v.                    Civil No. 5:22-CV-05232-TLB-CDC

SHERIFF CANTRELL; MAJOR RANDALL DENZER;
CAPTAIN NOLAN AKE; CORPORAL TOM MULVANEY;
DANIEL GIERTZ; LIEUTENANT A. ARNOLD; and
CAPTAIN KEVIN EAST                                         DEFENDANTS


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff John William Scharnhorst, III, a prisoner, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983.  (ECF No. 1).  He proceeds *pro se* and *in forma pauperis* ("IFP").  (ECF No. 6).  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation on the pending Motion for Partial Summary Judgment for Failure to Exhaust Administrative Remedies (ECF No. 34), and Separate Defendant Giertz' Motion to Dismiss (ECF No. 53).  Plaintiff has responded to both motions (ECF No. 64, 75), and Separate Defendant Giertz has replied in support of his Motion to Dismiss. (ECF No. 67).

## I.    PROCEDURAL POSTURE

On November 28, 2022, Plaintiff submitted his original complaint, along with a Motion to Proceed IFP.[1]  (ECF Nos. 1, 2).  After curing his IFP application, United States Magistrate

---

[1]  In this section, this Court does not endeavor to describe every docket entry into this case, only

1

Judge Mark Ford granted Plaintiff IFP status. (ECF Nos. 3, 5, 6).

Upon preservice review of the original complaint pursuant to 28 U.S.C. § 1915A(a), Judge Ford recommended that Plaintiff's original complaint be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).   (ECF No. 8).   During the objections period, Plaintiff filed a motion to amend his complaint.   (ECF No. 10).   United States District Court Judge Timothy L. Brooks granted the motion to amend, (ECF No. 11), declined to adopt Judge Ford's recommendation of dismissal, and referred the case for further consideration. (ECF No. 12).   In the interests of judicial economy, this matter was later reassigned to the undersigned.[2]

On March 31, 2023, Plaintiff submitted his Amended Complaint (ECF No. 15), and this Court directed service of the Amended Complaint on defendants. (ECF No. 16). On May 4, 2023, Defendants Nolan Ake, A. Arnold, Jay Cantrell, Randall Denzer, Kevin East, and Tom Mulvaney ("County Defendants") filed their Answer.   (ECF No. 18).

After multiple service attempts, separate Defendant Giertz was served on August 21, 2023 (ECF No. 27) and filed his Answer on September 11, 2023.   (ECF No. 28).

---

those relevant to the Court's consideration of the pending Motion for Partial Summary Judgment and Motion to Dismiss.

[2] This is one of seven civil rights actions Plaintiff initiated in this District within five months.   *See Scharnhorst v. Cantrell et al.*, 5:22-CV-05138-TLB (W.D. Ark. July 15, 2022); *Scharnhorst v. Helder, et. al*, 5:22-CV-05167-TLB (W.D. Ark. Aug. 10, 2022); *Scharnhorst v. Cantrell, et al.*, 5:22-CV-05176-TLB (W.D. Ark. Aug. 30, 2022); *Scharnhorst v. Cantrell, et al.*, 5:22-CV-05218-TLB-CDC (W.D. Ark. Oct. 19, 2022); *Scharnhorst v. Cantrell et al.*, 5:22-CV-05238-TLB-CDC (W.D. Ark. Dec. 14, 2022); *Scharnhorst v. Ake et al.*, 5:22-CV-05243-TLB-CDC (W.D. Ark. Dec. 19, 2022). On this Court's recommendation, Judge Brooks granted Defendants' Motion for Summary Judgment and dismissed *Scharnhorst v. Cantrell, et al.*, Case No. 5:22-CV-05176 (W.D. Ark. Aug. 30, 2022), with prejudice. *See* Case No. 5:22-CV-05176 (ECF No. 74).   All other cases remain pending at various stages of litigation.

On the same day, Defendants were directed to either file a motion for summary judgment on the issue of whether Plaintiff exhausted his administrative remedies in accordance with 42 U.S.C. § 1997e(a) by October 26, 2023, or promptly file a notice saying they did not intend to pursue such a defense at trial.   (ECF No. 30).   On October 26, 2023, County Defendants requested (and received) an extension of time to file a motion for summary judgment on the issue of exhaustion. (ECF No. 33).

On November 9, 2023, County Defendants submitted a Motion for Partial Summary Judgment for Failure to Exhaust Administrative Remedies along with a memorandum, statement of facts, and five exhibits in support.   (ECF Nos. 34, 36).   Plaintiff was directed to file his response by December 5, 2023.   (ECF No. 37).   Plaintiff subsequently filed four (4) motions for an extension of time to respond.   (ECF Nos. 38, 61, 70, 72).   Ultimately, this Court ordered Plaintiff to submit his response by not later than April 11, 2024 (ECF No. 73) and Plaintiff complied, responding to the County Defendants' Motion for Partial Summary Judgment on April 10, 2024.   (ECF No. 75).

While Plaintiff's response to the County Defendants' Motion for Partial Summary Judgment was pending, separate Defendant Giertz filed a Motion to Dismiss and memorandum in support.   (ECF Nos. 53, 54).   Plaintiff was directed to respond (ECF No. 55) and thereafter requested (and received) an extension of time until March 22, 2024. (ECF Nos. 61, 62).   On February 26, 2024, Plaintiff filed his pleading in opposition to Separate Defendant Giertz' Motion to Dismiss.   (ECF No. 64). Separate Defendant Giertz requested (and received) permission to submit a reply (ECF No. 65, 66) which was filed on March 4, 2024. (ECF No. 67).

## II.     BACKGROUND

Plaintiff's Amended Complaint asserts three (3) claims for relief.

First, Plaintiff says that from December 5, 2021, to November 16, 2022, Defendants Cantrell, Denzer, Ake, East, Mulvaney, and Giertz violated his First Amendment right to access published materials.  (ECF No. 15, p. 5).  Plaintiff contends Defendants Cantrell and Denzer have "instituted a complete ban on books and newspapers." *Id.*  Plaintiff says that officials have not allowed him to obtain his book from his property, order books from Amazon, receive books from family, or subscribe to a newspaper.  Plaintiff says Defendants Mulvaney and Ake have told him that books, including the Bible, are available on the Washington County Detention Center ("WCDC") kiosk/tablet system, but Plaintiff says that system is "horribly neglected, often non-operational or in a state of malfunction making usage impossible or nearly impossible." *Id.* Plaintiff says the WCDC kiosk/tablet system is provided to the WCDC via "Summit, Inc.," and maintained by Defendant Giertz.  *Id.*

Plaintiff says he has requested that Defendant Mulvaney save security footage showing staff allowing certain detainees to "own" or "monopolize" tablets.  *Id.*, p. 7.  According to Plaintiff, WCDC officials allow inmates to take the tablets with them into their cells even though Defendant Giertz has explained to him that the contract between Summit, Inc. and the WCDC prohibits this practice.  *Id.*  Plaintiff contends that overcrowding at the jail and the practice of allowing certain inmates to monopolize tablets have prevented him from having access to the tablets, thereby depriving him of access to published materials.  *Id.*  Specifically, Plaintiff asserts the following:

> 12/5/21 – 2/1/22 – R Block was over capacity, had only one kiosk, several non-operation tablets, and a broken charging bay.

2/1/22 – 2/10/22 – B Block was extremely overcrowded – 70 people in a cell block designed for 32.   1 kiosk and most tablets being "owned" making them unavailable to me and others.

2/10/22 – 2/21/22 – I was housed in S24 with 3 other detainees.   We got one hour out of our cell (15 minutes kiosk time each) all tablets were "owned" by "preferred" detainees and I had no access to them. On 2/15/22, I gave a letter to C. Rex which he delivered to Cpl. Mulvaney.

2/21/22 – 2/27/22 – The kiosk in S block froze up and stopped working.   Everyone in the cell block complained to staff. . .. We were told that Lt. A. Arnold & Daniel Giertz were aware.   Daniel never even came to look at it. . ..

3/9/22 – Kiosk in WR3 non-responsive

3/25/22 – 3/29/22 – Kiosk in N-block unusable due to screen malfunction

4/8/22 [3] – Kiosk in L unusable due to "DDC/CI enable/disable *error*"

4/25/22 – Kiosk in P block non-operational

4/28/22 – Kiosk in K block non-operational

5/6/22 – 5/7/22 – Kiosk in L block still unusable due to "DDC/CI Enable/Disable" error, 28 days after I first reported it.

7/18/22 – Swollen tablet causing all tablets to be unusable in Q block.

8/28/22 – 9/6/22 – No kiosk access for 8 days due to "technical issues" "log in server error" and tablets "in count" in A-1

9/18/22 – 9/19/22 – No kiosk or tablet access according to DFC Bishop "5 cell blocks are down" with "technical issues"

10/13/22 – 10/17/22 – No kiosk access due to "technical issues"

10/28/22 – Kiosk down due to "technical issues"

---

[3] In Plaintiff's Amended Complaint, the month is cut off in the margins.   This Court understands the month to be "4" based on the preceding dates and the dates which follow.

11/10/22[4] – Kiosk down due to "technical issues"

11/11 – 11/16 – Kiosk unusable due to faulty touch screen

11/8 – 11/16/22 – tablets will not allow me access due to "technical issues" which Daniel Giertz can determine, ex

(ECF No. 15, pp. 8-9).

Plaintiff identifies Defendants in their individual and official capacities, claiming that "standing policy prevents access to any published material as they are 'provided on the kiosk.'" *Id.*, p. 6.  Plaintiff contends that "neglect of the kiosk/tablet system, depriving detainees of published materials for days, a week, or longer is perfectly acceptable extremely common, and violating detainees' rights is the backbone of the operational procedure of the Washington County Sheriff's Department."  *Id.*

In his second claim, Plaintiff says that between February 21, 2022, to February 26, 2022, he developed two ingrown toenails and asked for nail clippers.  *Id.*, p. 10.  Plaintiff asserts that the floor guards did not provide him with any nail clippers, even though they told him they would. Plaintiff says that he was directed to file a medical services request, but the kiosk was nonoperational, and the tablets were being hoarded by certain inmates.  *Id.*  Plaintiff says he was informed that only Defendant Arnold could "reset" the kiosk system, but she did not.  Plaintiff also claims that Defendant Mulvaney and separate Defendant Giertz were aware of the problem, but no one took any action to repair the kiosk.  Plaintiff says he removed his ingrown toenails himself when the ingrown toenails became overwhelmingly painful.   Plaintiff identifies Defendants Arnold, Giertz, Denzer, Mulvaney, and Cantrell as defendants to this claim and he

---

[4] In Plaintiff's Amended Complaint, the month in this entry and in the next two entries is cut off in the margins.   That said, given the preceding dates and the date ranges, this Court understands the month to be "11."

asserts that their action/inaction violated his First Amendment right to freedom of speech, Fourteenth Amendment due process rights, and the Eighth Amendment prohibition against cruel and unusual punishment.   *Id.*, p. 10.   Plaintiff identifies Defendants in their individual and official capacities on the grounds that "it is the commonly accepted, widely practiced unofficial policy and custom to ignore the malfunctions and non-operation of the kiosk and tablet system." *Id.*, p. 12.

Finally, with respect to claim three, Plaintiff describes that a third-party processes incoming detainee mail at the WCDC and then makes that mail available electronically on the tablet/kiosk system.   *Id.*, p. 13.   Plaintiff says that – on the dates noted with respect to claim one – he was also denied access to his personal mail because he could not access (or was not able to access) the WCDC tablet/kiosk system in violation of his First Amendment right to freedom of speech and freedom of association.   *Id.*   Plaintiff identifies Defendants Cantrell, Denzer, Ake, East, Arnold, Mulvaney, and Giertz as defendants for claim three. *Id.*   Plaintiff identifies Defendants in their individual and official capacities, claiming that "[i]gnoring and showing deliberate indifference to detainee rights in general is the blanket prevailing policy of the Washington County Sheriff's Department.   Zero concern is given to the kiosk and tablet system and tablet deprivation is not only accepted but facilitated by the staff as a widespread practice." *Id.*, pp. 13-14.

## III.   ANALYSIS

### Separate Defendant Giertz' Motion to Dismiss

The undersigned's analysis begins with Separate Defendant Giertz' Motion to Dismiss. As a threshold matter, although Separate Defendant Giertz cites Rule 12(b)(6) of the Federal Rules

of Civil Procedure as the basis for his motion to dismiss, (ECF No. 54), "a Rule 12(b)(6) motion cannot be filed after an answer has been submitted." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Separate Defendant Giertz filed his Answer to the Amended Complaint prior to filing the pending Motion to Dismiss (ECF No. 28) and thus, his Motion to Dismiss pursuant to Rule 12(b)(6) is untimely. That being said, Fed. R. Civ. P. 12(h)(2) provides that "a defense of failure to state a claim upon which relief can be granted may be advanced in a motion for judgment on the pleadings under Rule 12(c)." *Id.* For these reasons, this Court analyzes Separate Defendant Giertz' Motion to Dismiss as one made pursuant to Fed. R. Civ. P. 12(c).

### A. Legal Standard

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Westcott*, 901 F.2d at 1488 (courts review a "12(c) motion under the standard that governs 12(b)(6) motions"). "[T]o survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. In considering a motion for judgment on the pleadings under Rule 12(c), "[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010). While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *Stone*

*v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983.   (ECF No. 15).   To establish a claim under 42 U.S.C. § 1983, "a plaintiff must allege a violation of a constitutional right committed by a person acting under color of state law."   *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006).   "Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)). Here, Plaintiff identifies all defendants in their individual and official capacities as agents of their employer and specifically, in the case of separate Defendant Giertz, as an agent of Summit Food Service, LLC ("Summit").   The Court first turns to Plaintiff's individual capacity claims against Separate Defendant Giertz.

**B. Individual Capacity Claim**s

"Suits against officials in their individual capacity seek to impose personal liability upon a government official for actions he takes under color of state law."   *Handt v. Lynch*, 681 F.3d 939, 943 (8th Cir. 2012) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).   To establish liability against officials in their individual capacity, "the plaintiff must show that the official, acting under color of state law *caused* the deprivation of a federal right."   *Id*. at 943 (citing Graham, 473 U.S. at 166) (emphasis added); *see also Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").   Because § 1983 liability is personal, moreover, "each defendant's conduct must be independently assessed."   *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015).

As a preliminary matter, this Court assumes, without deciding, that Separate Defendant

Giertz was operating as a state actor during the events giving rise to Plaintiff's claims.[5] Nevertheless, accepting Plaintiff's allegations in the Amended Complaint as true, Plaintiff has failed to plausibly assert a § 1983 claim against Separate Defendant Giertz.

*Claim One: Access to Newspapers and Published Materials*

Regarding claim one, Plaintiff asserts WCDC officials have told him published materials, including religious materials and the newspaper, are available on the WCDC tablet/kiosk system. (ECF No. 15, p. 6).   But, according to Plaintiff, "the kiosk/tablet system provided by WCDC via Summit Inc., [and] 'maintained' by Daniel Giertz is horribly neglected, often non-operational or in a state of malfunction making usage impossible or nearly impossible," *id.*, thereby infringing on his First Amendment right to the newspaper and printed materials.

"The Supreme Court has made it clear that persons who are incarcerated do not forfeit First Amendment protection of their rights to freedom of speech and religion at the prison gate." *Human Rights Defense Center v. Baxter Co. Ark.*, 999 F.3d 1160, 1164 (8th Cir. 2021) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).   Thus, "[t]o determine whether a jail or prison policy infringes on the First Amendment rights of inmates . . . the relevant inquiry is whether the policy is reasonably related to legitimate penological interests." *Id.* (internal quotation omitted).

Here, Separate Defendant Giertz argues that Plaintiff has failed to establish that Giertz was personally involved in crafting or implementing WCDC's policy on providing inmates access to published materials.   (ECF No. 54).   This Court agrees.   Plaintiff does not assert any facts supportive that Separate Defendant Giertz was personally involved in designing WCDC policy or

---

[5] In his Motion to Dismiss, Separate Defendant Giertz does not contend that Plaintiff failed to plausibly allege that he was operating as a state actor. (ECF No. 53). The Court does not reach this argument.

that Separate Defendant Giertz implemented this policy by personally uploading these materials on the tablet/kiosk system.[6] *Cf. Sterling/Sayyed v. Banks*, 72 F. App'x 504, 506 (8th Cir. 2003) (per curiam) (concluding that plaintiff had plausibly alleged a First Amendment claim against specific defendants because they were involved in "implementing and enforcing" the prison newspaper policy); *see also Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999) (per curiam) (prisoner alleged plausible First Amendment claim against the prison director for authorizing the denial of printed materials to inmates).   Accordingly, Plaintiff has failed to assert a plausible First Amendment claim against Separate Defendant Giertz.

To the extent that Plaintiff seeks to attach § 1983 liability against separate Defendant Giertz for purportedly failing to properly *maintain* the kiosk/tablet system, this claim is viewed as a challenge to Plaintiff's conditions of confinement under the Fourteenth Amendment.   The Due Process Clause under the Fourteenth Amendment "requires that a pretrial detainee not be punished."   *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1970)).

To determine whether a pretrial detainee's conditions of confinement constitute "punishment," a plaintiff may show that such conditions are "intentionally punitive," or, in the absence of an "expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Stearns*, 957 F.3d at 907.   The Due Process Clause, however, is "not

---

[6] Although Plaintiff also identifies Jay Cantrell, Randall Denzer, Nolan Ake, Kevin East, and Tom Mulvaney as defendants to this claim, only Separate Defendant Giertz has filed a Motion to Dismiss the Amended Complaint.   Thus, this Court only considers whether Plaintiff has established a plausible cause of action under § 1983 with respect to Separate Defendant Giertz.

implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 336 (1986) (requiring more than mere negligence to establish a substantive due process violation under the Fourteenth Amendment); *Stearns*, 957 F.3d at 908 n.5 (noting that defendants were "sheltered from liability for mere negligence under the *Bell* standard).

As a preliminary matter, Plaintiff's assertion that Separate Defendant Giertz was responsible for "maintaining" the kiosk/tablet system is entirely conclusory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (in determining whether a complaint has established a cause of action, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").   Importantly, Plaintiff asserts no particularized facts establishing *how* Separate Defendant Giertz was responsible for maintaining the kiosk/system or the scope of any such responsibility.   Indeed, according to Plaintiff, when he informed Separate Defendant Giertz of problems with the kiosk/tablet system, Giertz' "standard" reply was: "[S]ent this to the tech department."   (ECF No. 15, p. 7).   Even when assuming Plaintiff's allegations as true, they call into question whether Separate Defendant Giertz was even capable of addressing the problems with the kiosk/tablet system that Plaintiff brought to his attention and whether Separate Defendant Giertz was personally responsible for addressing (and repairing) any of the alleged problems.

Plaintiff complains he was not able to access the tablets during certain periods due to "overcrowding," and on other days because WCDC officials allowed certain inmates to monopolize the tablets. (ECF No. 15, p. 8).   Plaintiff does not (and cannot) plausibly allege that Separate Defendant Giertz had anything whatsoever to do with WCDC's daily detainee population and Plaintiff has not alleged that Giertz personally allowed certain inmates to monopolize the

tablets at Plaintiff's expense.   Plaintiff fails to assert sufficient, non-conclusory facts to establish a Fourteenth Amendment "conditions-of-confinement" claim against Separate Defendant Giertz in his individual capacity.[7]

Even if Plaintiff asserted sufficient facts showing that Separate Defendant Giertz was personally capable of and responsible for repairing the WCDC kiosk/tablet system, Plaintiff has still failed to assert a plausible *constitutional* violation. "In considering whether the conditions of pretrial detention are unconstitutionally punitive, [courts] review the totality of the circumstances of a pretrial detainee's confinement."   *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010); *see also Stearns*, 957 F.3d at 909 ("Importantly, we are concerned with the totality of the circumstances of Stearns's confinement and not any particular condition in isolation").   "There is . . . a de minimis level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539, n.21.

The purpose the WCDC kiosk/tablet system is to provide detainees access to printed materials, their personal mail, and the law library, among others, and to allow detainees to submit medical requests and grievances. (ECF No. 15). As the Court understands it, Plaintiff claims that the frequent interruptions in service (and the purported failure of Separate Defendant Giertz to

---

[7] To the extent that Plaintiff contends that Separate Defendant Giertz' Motion to Dismiss should be denied because the Court ordered service of his Amended Complaint upon preservice review pursuant to 28 U.S.C. § 1915A, (ECF No. 64), Plaintiff misapprehends the law.   "Every court to have considered the question has concluded that the sua sponte screening and dismissal procedure [under 28 U.S.C. § 1915A] is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion [to dismiss] that the defendant may choose to bring."   *Braun v. Hanson*, Case No. 18-CV-3355 (JNE/ECW), 2020 WL 1496580 at *2 (D. Minn. Jan. 27, 2020) (internal citation omitted), *report and recommendation adopted by* 2020 WL 1493884 (D. Minn. Mar. 27, 2020).   "To conclude otherwise, would deprive Defendants of the basic procedural right to challenge the sufficiency of the pleadings." *Id.* (internal citation omitted).

make timely repairs) constitutes punishment.   This Court does not agree.   Although Plaintiff lists

several periods during which the kiosks, tablets, or both, were unavailable to him, (ECF No. 15,

p. 8), Plaintiff attributes his lack of access, in part and on multiple instances, to "overcrowding"

and tablets being "owned" by certain detainees for which, as noted, Separate Defendant Giertz has

not control.   *Id.*   Of the remaining dates, Plaintiff says that from December 5, 2021, to February

1, 2022, "R-block was over capacity, had only one kiosk, several non-operational tablets and a

broken charging bay."   (ECF No. 15, p. 8).   From February 21, 2022, to February 27, 2022, "the

kiosk in S block froze up and stopped working."   *Id.*   On March 9, 2022, "kiosk in WR3 was

non-responsive." *Id.* From March 25, 2022, to March 29, 2022, "the kiosk in N block [was]

unusable due to screen malfunction." *Id.*   On April 8, 2022, the kiosk in "L" block was unusable,

*id.*; on April 25, 2022, the kiosk in "P" block was non-operational, *id.*; on April 28, 2022, the kiosk

in "K" block was non-operational, *id.*; from May 6, 2022, to May 7, 2022, the kiosk in "L" block

was still unusable 28 days after Plaintiff first reported the problem, *id.*; on July 18, 2022, a swollen

tablet caused all tablets to be unusable in "Q" block, *id.*; from August 28, 2022, to September 6,

2022, there was no kiosk access in A-1, *id.*, p. 9; from September 18, 2022, to September 19, 2022,

there was no kiosk or tablet access in "5 cell blocks," *id.*; from October 13, 2022, to October 17,

2022, there was no kiosk access due to "technical issues," *id.*; on October 28, 2022 and on

November 10, 2022, there was a kiosk down "due to technical issues," *id.*; from November 11,

2022, to November 16, 2022, a kiosk was unusable due to a "faulty touch screen," *id.*; and from

November 8, 2022, to November 16, 2022, Plaintiff could not access the tablets due to some

"technical issue," *id.*

       Plaintiff's list of complaints reflects that if the kiosk was malfunctioning, the tablets were

14

available for use and vice versa.   For example, while Plaintiff asserts that from December 5, 2021, to February 1, 2022, there was only one kiosk and several non-operational tablets, he does not claim that no tablets were functional, **and** that the kiosk was also non-functional.   Similarly, while he reports that the kiosk in "L" block was unusable on April 8, 2022, and again from May 6, 2022, to May 7, 2022 (twenty-eight days after he first reported it), Plaintiff does not assert that the tablets in "L" block were non-operational.   Conversely, while Plaintiff says that he could not access the tablets from November 8, 2022, to November 16, 2022, he does not contend that the kiosk itself was not functioning during that time.   When considering the totality of the circumstances, the undersigned concludes Plaintiff has failed to establish that the conditions of his confinement – namely, the purportedly frequent interruptions of kiosk and/or tablet service – violated his constitutional rights to be free from punishment.[8]

### Claims Two: Medical Indifference

With respect to Plaintiff's second claim, Plaintiff contends that because the kiosk/tablet system was inaccessible to him from February 21, 2022, to February 26, 2022, he was prevented from submitting a medical grievance which ultimately led him to remove his own ingrown toenails. (ECF No. 15, p. 10).   Plaintiff asserts violations of the First, Fourteenth, and Eighth Amendments. *Id.*

i.      **Eighth Amendment**

---

[8] Plaintiff contends that Separate Defendant Giertz was "deliberately indifferent" to the maintenance of the WCDC kiosk/tablet system, (ECF No. 64, p. 2).   For the reasons described above, however, this Court considers Plaintiff's claim about the maintenance of the WCDC kiosk/tablet system as a conditions of confinement claim under the Fourteenth Amendment.   As such, the Court analyzes whether the condition is "reasonably related to a legitimate goal." *Stearns*, 957 F.3d at 908.   This is a lower standard than "deliberate indifference."   *See id.* at 907-08.

Taking Plaintiff's contentions in reverse order, federal courts apply the Eighth Amendment "deliberate indifference" standard to a pretrial detainee's claims of inadequate medical care.   *See Davis v. Hall*, 992 F.2d 151, 152-53 (8th Cir. 1993) (per curiam).   To establish a plausible deliberate indifference claim, the plaintiff must show: "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (citing *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).   The "deliberate disregard" prong has two components: "[t]he evidence must show that the officers recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk."   *Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021) (quoting *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015)).   The required mental state is "akin to criminal recklessness."   *Id.*

As to Plaintiff's Eighth Amendment claim, this Court agrees with Separate Defendant Giertz.   Assuming, without deciding, that Plaintiff's two "ingrown toenails" constituted an "objectively serious medical need," Plaintiff failed to assert any facts suggesting that Separate Defendant Giertz was aware of that need and knew there was a substantial risk of harm to Plaintiff but failed to do anything about it.   Plaintiff's Eighth Amendment claim fails as a matter of law.

### ii.    Fourteenth Amendment Due Process

As the Court understands it, Plaintiff claims that because he was not able to submit a medical request or grievance for his ingrown toenail problem, he was denied due process under the Fourteenth Amendment.   (ECF No. 15, p. 10).

Review of a due process claim proceeds in two steps:   First, the Court must determine whether the claimant was deprived of a protected life, liberty, or property interest. *See Singleton v.*

*Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc) ("'The possession of a protected life, liberty, or property interest is a condition precedent' to any due process claim.") (quoting *Movers Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 718 (8th Cir. 1995)).   Second, if a protected interest is at issue, the Court must determine whether the procedures employed were sufficient to safeguard that interest.   *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974) (setting procedural requirements for prison disciplinary proceedings).

Here, Plaintiff's claim does not satisfy step one.   Federal courts repeatedly have held that inmates have no constitutional right to a grievance procedure.   *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam).   For this reason, Plaintiff's Fourteenth Amendment procedural due process claim fails as a matter of law.

### iii.    First Amendment

Plaintiff asserts a First Amendment violation on the grounds that he was prevented from exercising his right to free speech by inability to submit a medical request because the kiosk was malfunctioning and because WCDC officials allowed certain inmates to "hoard" the tablets. (ECF No. 15, p. 10).

The fundamental problem with this claim is that while Plaintiff asserts the kiosk was non-functioning during this period, he apparently concedes the tablets were operational.   (ECF No. 15, p. 10).   Thus, if he had access to a working tablet, he could have submitted a medical request. While Plaintiff says he could not access a tablet because they were being monopolized by certain detainees, he asserts no facts to suggest that Separate Defendant Giertz was responsible for allowing certain inmates to hoard the tablets; to the contrary, Plaintiff says, without naming Giertz, that "[WCDC] guards will take tablets away from [him] and give them to these preferred detainees

17

who claim 'ownership' over tablets which are supposed to be shared." (ECF No. 15, p. 7). The allegations concede that the malfunctioning kiosk did not, by itself, preclude his speech, and they fail to implicate Giertz.  Plaintiff's First Amendment claim against Separate Defendant Giertz should be dismissed.

*Claim Three: Access to Personal Mail*

Third, according to Plaintiff and pursuant to WCDC policy, detainee mail is uploaded onto the tablet/kiosk system for inmate access.   (ECF No. 15, p. 13).   Plaintiff asserts that when the kiosk/tablet system is malfunctioning, he cannot access his personal mail in violation of his First Amendment rights of free speech and free association.   *Id.*

Absent claims of intentional delay, however, "mere delay in delivery of prisoner mail, especially any delay that occurs over the weekend, is not unreasonable and thus fails to raise a constitutional question."   *Valiant-Bey v. Morris*, 829 F.2d 1441, 1444 n.5 (8th Cir. 1987); *see also Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) ("allegations of sporadic and short-term delays in receiving the mail are insufficient to state a cause of action."); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (plaintiff failed to establish First Amendment claim based on delays in mail delivery where those delays were sporadic and there were no allegations that the delays stemmed from some content-based prison policy or practice).

Once again, Plaintiff does not plausibly allege that Separate Defendant Giertz was personally responsible for uploading the detainees' personal mail onto the kiosk/tablet system, or that Giertz personally *caused* the service disruptions with the kiosk/tablet system, or that Giertz – as opposed to someone in the "tech department" – was responsible for addressing (and correcting) any service disruption.   Further, even had Plaintiff alleged sufficient facts showing that Separate

18

Defendant Giertz was responsible for addressing kiosk/tablet service outages, Plaintiff has failed to assert any plausible facts that Separate Defendant Giertz' failure to timely address and repair those outages was *intentional*.   Thus, Plaintiff has failed to state a plausible claim against Separate Defendant Giertz for the delays he experienced in receiving his personal mail.

### C.  Official Capacity Claims

Having concluded that Plaintiff has failed to state a claim against Separate Defendant Giertz in his individual capacity, this Court turns now to Plaintiff's claim against Separate Defendant Giertz in his *official* capacity as an alleged agent of Summit, Inc.

To establish official capacity liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity [or employer]."   *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

To establish existence of an unconstitutional policy, Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."   *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).   "Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability."   *Moyle*, 571 F.3d at 818.   Here, Plaintiff fails to assert any facts suggesting that Summit, Inc. was involved in drafting WCDC policies on providing detainees access to published materials, personal mail, or medical services.[9]

---

[9] Separate Defendant Giertz goes a step further, arguing that the WCDC's policy on detainee access to news and printed materials is not unconstitutional because courts in the Eighth Circuit have held that detainees' First Amendment right to receive published materials "does not create

Plaintiff also contends liability based on an "unofficial" WCDC custom; to pass muster on such a claim, a plaintiff must allege:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policy making officials after notice to the officials of that misconduct; and
>
> (3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e. proof that the custom was the moving force behind the constitutional violation.

*Tirado v. City of Minneapolis*, 521 F.Supp.3d 833, 840 (D. Minn. 2021) (citing *Ware v. Jackson Cty*, 150 F.3d 873, 880 (8th Cir. 1998)).

Here, even had Plaintiff alleged sufficient facts showing that the tablets, kiosks, or both were consistently and simultaneously in a state of disrepair, Plaintiff asserts no facts establishing the second or third factor.   Regarding the second factor, "[n]otice is the touchstone of deliberate indifference in the context of § 1983 municipal liability." *Id.* at 843.   Here, Plaintiff has articulated no specific allegations that Summit, Inc. was aware of the multiple alleged failures or – more to the point – Separate Defendant Giertz' purported untimely delays in addressing them.

Additionally, "the deliberate indifference requirement ensures that the [municipality's]

---

an affirmative duty on prisons to provide news publications to inmates."  (ECF No. 54, p. 4) (quoting *Collins v. Burl*, 2011 WL 2457532 (E.D. Ark. June 17, 2011)).   Because this Court finds that Plaintiff has failed to establish that either Summit, Inc. or Separate Defendant Giertz were personally involved in designing or implementing this policy, it is not necessary to reach the question of whether the policy itself is constitutional.   Further, that question is the subject of a separate lawsuit.   *See Scharnhorst v. Cantrell*, Case No. 5:22-CV-05138-TLB-CDC, 2023 WL 10889713 (W.D. Ark. Dec. 12, 2023), *report and recommendation adopted sub nom.*, 2024 WL 1195542 (W.D. Ark. Mar. 20, 2024), *appeal docketed*, No. 24-1681 (8th Cir. Apr. 1, 2024).

conduct was the moving force behind the constitutional violation." *Id.* (internal quotation and citation omitted).   Plaintiff has failed to even assert that Summit, Inc. was on notice, and similarly failed to articulate any facts suggesting that Summit, Inc. was "deliberately indifferent" to Separate Defendant Giertz' alleged failure to properly maintain the system, or that this deliberate indifference was the moving force behind any constitutional violation.   This is particularly true here where Plaintiff alleges additional reasons why he could not access the tablet/kiosk system, namely, WCDC officials allowing certain inmates to "hoard" functioning tablets.   For these reasons, Plaintiff has failed, as a matter of law, to establish an official capacity claim against Separate Defendant Giertz.

## D.  Conclusion

For the reasons described above, it is recommended that Separate Defendant Giertz' Motion to Dismiss (ECF No. 53) be **GRANTED**.   Plaintiff's claims against Separate Defendant Giertz should be **DISMISSED WITHOUT PREJUDICE**, and Separate Defendant Giertz **TERMINATED** as a defendant to this action.

### Motion for Summary Judgment

In the County Defendants' Motion for Partial Summary Judgment, these defendants assert that Plaintiff failed to exhaust his administrative remedies as to any of the County Defendants in their individual capacities, and as to claim two (medical indifference) and claim three (mail delays) against them in their official capacities.[10]

AS discussed above, Plaintiff contends that WCDC policy requires him to submit

---

[10] The County Defendants do not contend that Plaintiff failed to exhaust his administrative remedies with respect to claim one against County Defendants in their official capacities.   (ECF No. 34).

grievances on the WCDC kiosk/tablet system, but because this system was constantly malfunctioning, he could not exhaust his administrative remedies.   (ECF No. 75).   For reasons set forth below, this Court is unpersuaded.

Plaintiff was a prisoner when he initiated this action (ECF No. 15) and thus, his claims are subject to the Prison Litigation Reform Act (PLRA).   Section 1997e(a) of the PLRA "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions."   *Booth v. Churner*, 532 U.S. 731, 733 (2001).   Proper exhaustion under Section 1997e(a) "demands compliance with the agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).   "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim*, but it is the prison's requirements, not the PLRA*, that define the boundaries of proper exhaustion."   *Jones v. Bock*, 549 U.S. 199, 218 (2007) (emphasis added).

**A.  WCDC Exhaustion Procedure**

The County Defendants assert – and Plaintiff does not dispute – that the grievance procedure in effect at the time of the events giving rise to Plaintiff's claims is set forth in the Washington County Detention Center Handbook ("WCDC Handbook") as follows:

> You are allowed to file a grievance if you feel you have been subjected to abuse or an abridgment of your civil rights while being detained.   **All grievances will be done on the kiosk in your cellblock.**
> A grievance must be submitted within ten days from the time the event complained of occurred.   The grievance should include:
>
> A.  The date and approximate time of the event
> B.  The name(s) of the person(s) involved.
> C.  The name(s) of any witness(es)
> D.  Pertinent details of the event

> All grievances are reviewed by the Jail Administrator or their
> designee.  If you feel your grievance was improperly handled,
> you may appeal to the Sergeant or Lieutenant.

(ECF No. 36-5) (emphasis added).

Further, County Defendants assert – and Plaintiff does not dispute – that the WCDC Handbook, and thus the WCDC grievance procedure, is available for detainees to access on the kiosk.   (ECF No. 36, p. 42).   Thus, for the purposes of summary judgment, this Court concludes that the WCDC grievance procedure as described by the County Defendants was the relevant grievance procedure during the events giving rise to Plaintiff's claims, and that this procedure was available for Plaintiff to access and read.   *See* Fed. R. Civ. P. 56(e)(2).

## 1.  Plaintiff's Kiosk Submissions

It is also undisputed that Plaintiff submitted multiple (perhaps hundreds) of grievances on the tablet/kiosk system while detained at the WCDC.   The County Defendants filed 102 pages of Plaintiff's kiosk submissions for this Court to consider in support of their Motion for Summary Judgment.   (ECF No. 36-3).   In response, Plaintiff filed 6 pages of his kiosk submissions in opposition to the County Defendants' Motion for Partial Summary Judgment. *See* (ECF No. 75, pp. 16-20, 23).   The undersigned considers the kiosk submissions filed by Plaintiff and Defendants as the closed universe of Plaintiff's kiosk entries the parties wish for this Court to analyze in considering whether Plaintiff properly exhausted his administrative remedies before filing this lawsuit.   Of these submissions, however, this Court views and considers as relevant those Plaintiff submitted during or near the time frame alleged in the Amended Complaint: December 5, 2021, to November 16, 2022.   *See* (ECF No. 15).

Upon review of those kiosk submissions and leaving aside the issue of whether these grievances exhausted Plaintiff's administrative remedies, the Court is persuaded that Plaintiff

23

repeatedly complained about the WCDC kiosk/tablet system, and the WCDC personnel and policies.   As examples, [11] on December 14, 2021, Plaintiff wrote:

> The tablet bank is malfunctioning, not releasing #5 on the right side but only making that one available a majority of the time reducing the actual usable time of the entire bank dramatically.   There is at least one if not more tablets which are not responding properly to touch functioning making it (Them) useless.   Please have a technician address this ASAP so that the communications conduits we need in order to correspond with our legal counsel, family, friends, and access to the news will meet the necessary demands of our overcrowded pod.   Thank you.

(ECF No. 36-3, p. 1).  On December 19, 2021, Plaintiff wrote again:

> We are not being provided with enough resources to maintain sufficient communications due to overcrowding.   The number of people needing access to the kiosk and tablets for the purposes of news, emails, and video meetings are creating a demand that current provided resources are unable to provide for.   The tablet bank is in disrepair, the tablets do not maintain a charge long enough and are often dead when retrieved from the charging bank.

(ECF No. 36-3 p. 3).   On February 2, 2022, Plaintiff wrote:

> I am writing this to serve as a grievance since I cannot file grievances due to the limit of three and the fact that my grievances are no longer being addressed, my oldest filed January 21st almost 2 weeks ago sits unresolved and unanswered. … I have been moved to B-pod which has approximately 69 detainees in a pod designed for 32. There is one kiosk and the tablet bank is dysfunctional and a large portion of the tablets are non-operational. Also, there is virtually no table space due to the overcrowded nature of the cell block. Institutions are required to provide an adequate law library and I am being deprived of any realistic ability to mount a defense. I am writing this grievance in due diligence to avoid any possibility of Corporal Mulvaney or Washington County implying that I did not exhaust the grievance process. I have brought this issue to

---

[11]   This section does not include every kiosk entry the parties wish for this Court to consider. There are simply far too many.   Rather, the Court endeavors to focus its inquiry on whether the kiosk entries submitted by Plaintiff, (ECF No. 75), create a material fact dispute about whether he properly exhausted his administrative remedies before filing this action in accordance with 42 U.S.C. § 1997e(a).

Mulvaney's attention and even provided codes and supreme court case law in attempts to exert my rights and am being denied this basic function of law and civil rights by Corporal Mulvaney personally and in his professional capacity as he has stated that it is the policy of the Department, ordered, accepted and observed by the staff to refuse my access to an adequate law library or to provide assistance in preparing my case and court filings.

(ECF No. 36-3, p. 9) (ECF No. 75, p. 18).   On February 6, 2022, Plaintiff wrote:

Mulvaney, please save the video from B-Pod at 9:06 AM today showing me on the kiosk attempting to use the "law library" and an impatient fellow detainee insisting that I get off so that he can use the kiosk.   There are over 60 people in this pod and it is absolutely impossible to be on the kiosk for the length of time that it would realistically prepare a defense or successfully pursue a 1983 even IF the "law library were adequate which it is not. . .. It is absolutely unreasonable to expect a detainee to be able to effectively pursue any legal action under these circumstances, I am not being provided with access to adequate law library intentionally in order to prevent me from defending myself against Tim Helder and his malicious prosecution, constituting false imprisonment when coupled with my denial of attorney-client privilege and denial of a writing implement, resulting in denial of my access to the court. . . .

(ECF No. 36-3, p. 25); (ECF No. 75, p. 19). Further, on February 20, 2022, Plaintiff wrote:

I do not have access to tablets and my kiosk time is extremely limited due to only having one hour out of my cell per day and having to split it with the 4 people in my cell.

(ECF No. 36-3, p. 19).   On February 26, 2022, Plaintiff wrote:

The kiosk has been inoperative since the 21st and I have had no access to a tablet until today. I have begun logging my grievances on paper and attempting to mail them to Corporal Mulvaney. I only have 15 minutes on this tablet and will not use it up filing a few grievances. I have been refusing meals since breakfast 2/25 and will continue to do so until my rights are restored and my grievances addressed.

(ECF No. 36-3, p. 21).   On February 27, 2022, Plaintiff wrote:

I have been asking to have my beard trimmed to keep hair out of my mouth and food out of my hair for weeks. I have been asking for nail

25

clippers for over a week. I have been denied kiosk access for 6 days except for the 15 minutes I got yesterday on a tablet.

(ECF No. 36-3, p. 22).   On May 7, 2022, Plaintiff submitted the following:

Kiosk in L is malfunctioning badly, it constantly hangs up and displays DDC/CI Enable, Disable.  It takes 5 times as long to accomplish anything than necessary.   For those of us with only one hour per day and only 30 minutes on the kiosk, time is crucial.

(ECF No. 36-3, p. 36).   On July 18, 2022, Plaintiff wrote:

The tablet in A-6 is swelling and cannot be removed once inserted into the charging bank.   This is causing problems getting the other tablets out.   Please replace this faulty tablet.

(ECF No. 36-3, p. 45).   And on August 24, 2022, Plaintiff wrote:

The kiosk in A-1 needs to be adjusted, it's nearly inpossible [sic] to get the screen to close out from inquiries like this one. Thanks.

(ECF No. 36-3, p. 46).   On August 28, 2022, Plaintiff wrote:

The kiosk is out of adjustment making closing screens out very difficult, frustrating and time consuming. . ..

(ECF No. 36-3, p. 52).   On September 2, 2022, Plaintiff wrote:

I have not had access to the kiosk, messages, news, etc. for the last 3 days and most of my hour out today. I have [asked] for paper grievances and newspaper and been denied both.

(ECF No. 36-3, p. 55).   Further, on September 20, 2022, Plaintiff wrote:

Please consider this a grievance as I am currently maxed out because you are refusing to answer them, one is almost a month old (8/25/22).   The kiosk has been down the last 2 days, preventing me from accessing the Law Library, Daily News, Grievances, messaging, etc.   This has been a major problem during the course of this entire month.   How long will you continue to allow this faulty system to deprive detainees of their rights before you address it with a solution.

(ECF No. 36-3, p. 3).   On October 16, 2022, Plaintiff wrote:

26

> Consider this a grievance since I am maxed out in several other
> fields.   The kiosk was down all day yesterday and is down again
> today.   I have only had 15 minutes access to a tablet.   You are
> obstructing my ability to access the law library and the newspaper,
> mail, email, grievances, commissary, visitation, and every other
> aspect afforded by the kiosk system. . ..

(ECF No. 36-3, p. 70).   On October 25, 2022, Plaintiff wrote, in part:

> I cannot log into the tablets.   I've brought this to the attention of the
> staff numerous times and told Daniel about it as well.   In the last 2
> months since being moved to A-1 I have successfully logged in to
> the tablet 3 times. . ..

(ECF No. 36-3, p. 63).   On October 29, 2022, Plaintiff reported:

> Daniel, yesterday the kiosk was down all day and the tablet gave me
> the message that the tablet was locked until returned to dock or buy
> a gold pass.   This is an ongoing problem that I have reported
> consistently amd [sic] has been a serious issue since August . . ..

(ECF No. 36-3, p. 71).   On October 31, 2022, Plaintiff wrote, in part:

> Please let this serve as a grievance for the fact that I am still being
> denied access to the tablets.   Mulvaney, please save video from A-
> 1 today at 10/31 at approximately 12:16 PM showing me pull a
> tablet from the tablet bank, attempt to log in and the message stating
> that I need to buy a gold pass, as I held the tablet up for the camera
> to document. . ..

(ECF No. 36-3, p. 69); (ECF No. 75, p. 20).   On November 16, 2022, Plaintiff wrote:

> Please file this as a grievance.   The touch screen on this kiosk is so
> messed up I can't use the law library.   I'm trying to look up 28 USC
> SS 636 B1C

(ECF No. 36-3, p. 78).

Similarly, Plaintiff plainly complained about his access to the newspaper and other

published materials and the mail.   On December 15, 2021, for example, Plaintiff wrote:

> I'd like to receive a newspaper as I believe is a requirement of the
> law.   With nearly 60 people in the work release pod and over 40 in

> R block and the limied [sic] access to the kiosk and tablets due to
> demands created by overcrowding and lack of maintenance I am
> unable to keep up with news and current events.

(ECF No. 36-3, p. 2).   Further, on April 12, 2022, Plaintiff wrote:

> This grievance is for being denied completely, or heavily limiting
> my kiosk access, violating my rights of access to news, law library,
> the ability to file grievances, etc.   Today I was brought to L-Block
> for my hour out at 11:23 AM and tried accessing the kiosk every 5
> minutes from 11:42 until 12:12 and then every single minute until I
> was finally granted access at 12:30 PM, an hour and 7 minutes after
> I was brought over.   The last time I had kiosk access several days
> ago I was treated in a similar fashion by Pineda and then kicked off
> the kiosk and taken back to my cell by T. Beck.   This is not
> accidental.   I am intentionally being inhibited from preparing a
> defense for trial and researching the law regarding my 1983s against
> Tim Helder and his deputies.

(ECF No. 36-3, p. 35).   On September 7, 2022, Plaintiff wrote:

> Consider this a grievance: I have been deprived of daily news for 7
> of the last 8 days due to the failure of the department to maintain an
> operational kiosk system.

(ECF No. 36-3, p. 56).   On October 29, 2022, Plaintiff wrote, in part:

> This grievance is against Daniel Gertz, Summit and the
> Washington County Sheriff's department for their indifferent
> failure to ensure reliable access to the law library, mail, email,
> visitation, medical services, grievances and all other services which
> Summit is contracted with the sheriff's department to provide.
> Yesterday the kiosk was down all day and I was refused access to
> a tablet when I tried to log in again . . ..

(ECF No. 36-3, p. 67).   On November 14, 2022, Plaintiff reported:

> Reading the newspaper or using the law library are impossible with
> this messed up touch screen. Come try it.   Ordering commissary is
> like pulling teeth.

(ECF No. 36-3, p. 75).   On November 15, 2022, Plaintiff also reported:

> This kiosk is really messed up.   I can't open the top line of inquiries,
> it goes to the second.   I can't read the newspaper or use the law

28

library.

(ECF No. 36-3, p. 76).

Plaintiff also filed complaints about specific WCDC officials and other individuals.   For

example, on January 21, 2022, Plaintiff wrote:

> I would like compensation and relief for the violation of my civil
> rights by Sheriff Tim Helder, Detective Brian Magee, Major Denzer,
> Sergeant Pineda, Corporal Mulvaney, Corporal Nunziato, Deputy
> Beck, Deputy Raines, Deputy Phipps, Deputy Misenhimer, Deputy
> Carpenter, Deputy Cox, Deputy Cena, Deputy Nunziato, Deputy
> Caudil, the direct supervisors of all persons listed above and
> Washington County.   Tim Helder arranged to have his deputies
> fabricate false charges against me, has incarcerated me, extradited
> me from North Carolina, held me on an excessive bond, denied me
> access to the courts, denied me legal representation, treated me
> cruelly and inhumanely, endangered my life my intentionally
> infecting me with a deadly disease which I am now suffering form
> and retaliated against me for grieving all these misdeeds every step
> of the way, causing me physical, emotional and psychological harm.
> I have made every possible attempt to remedy my situation and this
> is my last effort to resolve my grievances. . ..

(ECF No. 36-3, p. 4); (ECF No. 75, p. 17).   On February 8, 2022, he wrote:

> I would like for this to serve as a grievance since I am limited to 3
> grievances and I am at my limit and my current grievances have not
> been addressed.   This grievance is against Corporal Mulvaney,
> Lieutenant Ake, Lieutenant East, Deputy Phipps, Deputy Tate,
> Deputy Ochieng, Deputy Taylor, Deputy Pruitt and the deputy who
> wore no name tag on the night shift last night for the intentional
> obstruction of my ability to file a 1983 case against Tim Helder, his
> deputies and Washington County and prepare a legal defense in my
> criminal case.

(ECF No. 36-3, p. 7).   On March 8, 2022, Plaintiff wrote:

> This grievance is against Chief Deputy Jay Cantrell for refusing to
> address my civil rights violations despite my bringing them to his
> attention in the two letters I've mailed.   The deputies under his
> direction continue to violate my civil rights displaying his
> acceptance, approval and encouragement of the unofficial custom of

the Washington County Sheriff and his deputies to violate law, code and regulation, showing disregard for the safety, well-being and rights of the detainee population as well as the general public whom they claim to serve and protect.   It also exemplifies his indifferent failure to properly train and supervise the men and women under his command.

(ECF No. 36-3, p. 30) (ECF No. 75, p. 23).

## 2.  Analysis

Turning to the question of whether these kiosk submissions properly exhausted the WCDC grievance procedure, the undersigned preliminarily notes that the WCDC procedure plainly requires detainees to submit grievances on the kiosk/tablet system but does not require inmates to specifically submit their complaints under the "grievance category." (ECF No. 36-5). For purposes of exhaustion, this Court does not consider the category under which Plaintiff submitted his grievance but only the substance of the submission itself and the date on which it was submitted.

### i.    Claim One

Regarding claim one, Plaintiff says that "Jay Cantrell and R. Denzer have instituted a complete ban on books and newspaper;" that Defendant Mulvaney told him he could not obtain a book from his property or order books from outside the facility; that Defendant East told him his family could not drop books off for him to read; and that Defendants Mulvaney and Ake have told him that he can read books on the tablet/kiosk system even though the kiosk/tablet system is "horribly neglected, often non-operational or in a state of malfunction making usage nearly impossible."   (ECF No. 15, p. 5).

It is undisputed that Plaintiff has submitted grievances about not being able to access printed materials or the newspaper on the WCDC tablet/kiosk system.   *See, e.g.*, (ECF No. 36-3, pp. 2, 35, 56, 67, 75).   The problem, however, is that contrary to WCDC policy, none of these

grievances are specifically stated against Defendants Cantrell and Denzer for "instituting a complete ban on books and newspaper" that Plaintiff now alleges in his Amended Complaint. (ECF No. 36-3).   For example, on July 6, 2022, Plaintiff wrote:

> Mulvaney, I sent letters to Cantrell, Denzer, and East last week asking that they re-evaluate current policy regarding detainees' access to news, literature, and religious materials.   It is my opinion that current policies are a violation of our rights.   Please let me know whether policy has changed or is being considered or if I need to have a judge weigh in on the issue. Thanks.

(ECF No. 36-3, p. 44).   On its face, this grievance merely informs Defendant Mulvaney of the letters he wrote to Cantrell, Denzer, and East about his problems with the WCDC policies on detainee access to printed materials and the daily newspaper.   The July 6, 2022, grievance, however, is not submitted *against* Defendants Cantrell, Denzer or East for instituting or implementing that policy.

Further, to the extent that Plaintiff's claim is against Defendants Cantrell, Denzer, and East for implementing a policy providing that detainees can only access printed materials and the daily newspaper on the kiosk/tablet system notwithstanding the system's problems, Plaintiff has again failed to properly exhaust his administrative remedies.   To be sure, as Plaintiff points out, he submitted the following grievance on November 21, 2022:

> WCDC does have complete control over how they handle mail, law library, newspaper, visitation, etc.   I have filed grievances for a year now and mailed letters to you [Defendant Mulvaney], Ake, Denzer and Cantrell asking that you address this with Summit.   In one of the grievances YOU said to me that I will not dictate to you how WCDC operates, and sjnce [sic] you all have knowingly and deliberately violated my rights and the rights of every other detainee a Federal Judge is now going to dictate to you how WCDC will operate since you all lack the ethics, moral compass, sound judgement [sic] and prudence to do it yourselves.   I shouldn't have to dictate how yo7 [sic] sho8ld [sic] operate and either should a

> Federal Judge. You swore an oath to uphold the constitution and Tim Helder, Jay Cantrell, Randall Denzer and everyone under them BY LAW have to operate this facility in accordance with the US Constituti9n [sic] and all other appl8cable [sic] state and local laws and you are all fail9ng miserably due to your arrogance, ignorance of the law, your apathy and complacency, lack of proper training and supervision, but most of all NOBODY CARES.   This is why everyone hates cops because you're assholes.

(ECF No. 36-3, p. 81); (ECF No. 75, p. 16).   On November 27, 2022, Plaintiff reported:

> The tablets are unusable, it won't release then, iit [sic] says they're "in count". Couple that with the nfactthat [sic] touch screen 8snstil [sic] messed up, and I haven'tmbeen able to log into th3 tablets even when they are working . . . which is why I ave f8led a lawsuitmagainst Daniel, Ja7 Dantrell, Randall Dnenzer and Mulganey over tis complete disregard for our access to mail, news, law l9brary, etc. [sic].

(ECF No. 36-3, p. 77).

Plaintiff's November 27, 2022, grievance clearly does not satisfy the WCDC grievance policy.   Rather, this grievance appears to describe action that Plaintiff has already taken by filing a lawsuit against Defendants Cantrell, Denzer, and Mulvaney.

Plaintiff's November 21, 2022, grievance presents a closer question.   On its face, this grievance is against Defendants Mulvaney, Ake, Denzer, and Cantrell for failing to address (and correct) kiosk/tablet problems directly with Summit, Inc.   But the WCDC grievance policy requires the grievance to contain "the date and approximate time of the event," and "pertinent details of the event."   Plaintiff's November 27, 2022, grievance does not include either – instead, it appears to be a general complaint about Defendants Mulvaney, Ake, Denzer, and Cantrell's perceived failure to take any action with Summit, Inc. in response to his prior letters.   This is not sufficient to comply with WCDC's grievance policy.

Further, pursuant to Section 1997e(a)'s exhaustion requirement, "[n]o action shall be

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail . . . *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Here, Plaintiff's original complaint was signed and dated November 17, 2022; litigation had been initiated before the November 21, 2022, grievance, and Plaintiff's Complaint was signed and submitted on the same date as the November 17, 2022, grievances. *See* (ECF No. 1, p. 8). And importantly, according to Plaintiff's Amended Complaint, the relevant time frame of the events giving rise to claim one was between December 5, 2021, to November 16, 2022. (ECF No. 15). Plaintiff's November 27, 2022, grievance falls outside of this timeframe. For these reasons, Plaintiff's November 27, 2022, grievance does not satisfy Section 1997e(a)'s exhaustion requirement for claim one.

Plaintiff submitted a grievance on March 8, 2022, requesting to obtain his books from his property and asks whether he can order books online. (ECF No. 36-3, p. 34). The next day, Defendant Mulvaney responds explaining, "There will be no books from your property allowed into the detention center . . . No books will be ordered from anywhere." *Id.* The summary judgment record, however, illustrates that Plaintiff failed to file a grievance *against* Defendant Mulvaney within ten (10) days of receiving this response.[12]

This leaves Plaintiff's claim against Defendant Mulvaney and Ake because they told him he can access the daily news and printed materials on the kiosk/tablet system even though that

---

[12] At this stage of the proceedings, this Court does not address the merits of Plaintiff's claim that Defendant Mulvaney violated his First Amendment rights simply because he denied Plaintiff's grievances asking to obtain books from his property or to order books online. *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (denial of grievances fails to state a substantive constitutional violation) (citing *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam)). Instead, the Court merely considers whether Plaintiff properly exhausted his administrative remedies with respect to his claim, finding that he did not.

system is purportedly frequently non-operational. (ECF No. 15, p. 5).   As noted, while Plaintiff repeatedly complains about problems he has experienced accessing the tablet/kiosk system (see ECF No. 36-3, pp. 1, 3, 9, 19-22), the summary judgment record contains no grievances showing that within ten (10) days of a service interruption, Plaintiff submitted a grievance against Defendants Mulvaney, Ake, or both, because they told Plaintiff he could access the daily news and printed materials on the tablet/kiosk system when, in reality, he could not.   Accordingly, with respect to claim one, this Court agrees that Plaintiff failed to properly exhaust his administrative remedies against Defendants Cantrell, Denzer, Ake, East, and Mulvaney in their individual capacities.

  *ii.* *Claim Two*

  In claim two, Plaintiff asserts that he could not file a medical request because he could not access the kiosk/tablet system from February 21, 2022, to February 26, 2022, which led him to remove his own ingrown toenails.   (ECF No. 15, p. 10).   Plaintiff claims that Defendant A. Arnold could have (but did not) reset the kiosk during this time.   *Id.*   Plaintiff further claims that he told Defendant Mulvaney about the non-functioning kiosk in a letter to Mulvaney.   In addition to Defendants A. Arnold and Mulvaney, Plaintiff also identifies WCDC officials Denzer and Cantrell as defendants to this claim.

  To be sure, Plaintiff asserts he was unable to access the kiosk/tablet system from February 21, 2022, to February 26, 2022.   (ECF No. 15, p. 10).   But the summary judgment record establishes that during the ten (10) days following February 26, 2022, Plaintiff entered no fewer than four kiosk submissions.   On February 26, 2022, he wrote:

> The kiosk has been inoperative since the 21st and I have had no access to a tablet until today.   I have begun logging my grievances

34

> on paper and attempting to mail them to Corporal Mulvaney.   I only
> have 15 minutes on this tablet and will not use it up filing a few
> grievances.   I have been refusing meals since breakfast 2/25 and
> will continue to do so until my rights are restored, and my grievances
> addressed.

(ECF No. 36-3, p. 21).   On February 27, 2022, he wrote:

> I have been asking to have my beard trimmed to keep hair out of my
> mouth and food out of my hair for weeks.   I have been asking for
> nail clippers for over a week.   I have been denied kiosk access for
> 6 days except for the 15 minutes I got yesterday on a tablet.

(ECF No. 36-3, p. 22).   On March 3, 2022, Plaintiff wrote:

> I would like a shave, I have hair growing into my mouth and I am
> getting food all in my beard … this does not comply with WCDC's
> policy of health and hygiene… I cannot eat without eating the hair
> on my face.   This is another 8th Amendment of cruel and unusual
> punishment by Tim Helder and his deputies.   I resorted to digging
> my ingrown toenail out with shards of a broken pencil, officer
> Schmitt took photos of my toenails.   You have no scruples
> whatsoever, you are absolutely corrupt to the core.

(ECF No. 36-3, p. 29).   Finally, on March 8, 2022, Plaintiff wrote:

> This grievance is against Chief Deputy Jay Cantrell for refusing to
> address my civil rights violations despite my bringing them to his
> attention in the two letters I've mailed.   The deputies under his
> direction continue to violate my civil rights displaying his
> acceptance, approval and encouragement of the unofficial custom of
> the Washington County Sheriff and his deputies to violate law, code
> and regulation, showing disregard for the safety, well-being and
> rights of the detainee population as well as the general public whom
> they claim to serve and protect.   It also exemplifies his indifferent
> failure to properly train and supervise the men and women under his
> command.

(ECF No. 36-3, p. 30).

At no time did Plaintiff submit a grievance against Defendant A. Arnold for failing to

restart the kiosk during this time frame.   And while Plaintiff submitted a grievance on February

26, 2022, saying that he started to send written grievances to Defendant Mulvaney because the kiosk/tablet system was unavailable to him, (ECF No. 36-3, p. 21), he does not submit a grievance *against* Defendant Mulvaney because of no access to the kiosk/tablet system from February 21, 2022, to February 26, 2022.   Further, none of these kiosk submissions illustrate that Plaintiff filed a grievance *against* Defendant Denzer as a result of Plaintiff being unable to access the kiosk/tablet system from February 21, 2022, to February 26, 2022.

While Plaintiff's March 8, 2022, grievance, specifically identifies Defendant Cantrell as the subject of the grievance, the grievance itself does not say what specifically Defendant Cantrell did (or did not do) in violation of his civil rights. (ECF No. 36-3, p. 30); (ECF No. 75, p. 23). Thus, this grievance fails to describe "the pertinent details of the event," contrary to the requirements of the WCDC grievance policy.   During the ten (10) days following February 26, 2022 – the date Plaintiff says he was able to access the kiosk/tablet system following a five-day interruption in access – Plaintiff does not submit any grievance about being denied medical care for his ingrown toenails due to lack of access to the kiosk/tablet system.   Accordingly, the undersigned agrees that Plaintiff failed to exhaust his administrative remedies with respect to claim two against the County Defendants in their official and individual capacities.

   *iii.    Claim Three*

Regarding claim three, Plaintiff says that from December 5, 2021, to November 16, 2022 – when he could not access the tablet/kiosk system – he was also denied access to his personal mail because detainee mail is electronically uploaded onto that system. (ECF No. 15, p. 12). Plaintiff identifies Defendants Cantrell, Denzer, Ake, East, A. Arnold, and Mulvaney as defendants to this claim.   *Id.*   None of Plaintiff's grievances, however, illustrate that Plaintiff

specifically submitted a grievance against these County Defendants because he could not access

his personal mail when the kiosk/tablet system was non-operational.   On December 19, 2021, for

example, Plaintiff wrote:

> We are not being provided with enough resources to maintain
> sufficient communications due to overcrowding.   The number of
> people needing access to the kiosk and tablets for the purposes of
> news, emails, and video meetings are creating a demand that current
> provided resources are unable to provide for.   The tablet bank is in
> disrepair, the tablets do not maintain a charge long enough and are
> often dead when retrieved from the charging bank.

(ECF No. 36-3, p. 3).   On August 28, 2022, Plaintiff wrote:

> The kiosk is out of adjustment making closing screens out very
> difficult, frustrating and time consuming. Time is of the essence
> when you only have 30 minutes to get everything done (order
> commissary, file grievances, send and read emails, read the
> newspaper, etc.) . . ..

(ECF No. 36-3, p. 52).   On October 16, 2022, he wrote:

> Consider this a grievance since I am maxed out in several other
> fields.   The kiosk was down all day yesterday and is down again
> today.   I have only had 15 minutes access to a tablet.   You are
> obstructing my ability to access the law library and the newspaper,
> mail, email, grievances, commissary, visitation, and every other
> aspect afforded by the kiosk system. . ..

(ECF No. 36-3, p. 70).   On October 25, 2022, he wrote:

> I cannot log into the tablets.   I've brought this to the attention of the
> staff numerous times and told Daniel about it as well.   In the last 2
> months since being moved to A-1 I have successfully logged in to
> the tablet 3 times. . .. Summit is failing to provide the access to the
> resources that they're contracted to provide and considering the
> frequency of kiosk problems, tablet issues, and charging bank issues
> I think it's time they be warned to meet the obligations of their
> service or be replaced with a provider who will. . .. The detainees
> are consistently deprived of mail, visitation, messaging, the ability
> to file medical services requests, contact the public defender or their

> private council, enter grievances, read the newspaper, order commissary, access the 'law library,' etc.

(ECF No. 36-3, p. 63).   On October 29, 2022, Plaintiff wrote:

> This grievance is against Daniel Gertz, Summit, and the Washington County Sheriff's Department for their indifferent failure to ensure reliable access to the law library, mail, email, visitation, medical services, grievances, and all other services which Summit is contracted with the sheriff's department to provide. . ..

(ECF No. 36-3, p. 67).     Also on October 29, 2022, Plaintiff wrote:

> Daniel, yesterday the kiosk was down all day and the tablet gave me the message that the tablet was locked until returned to dock or buy a gold pass.   This is an ongoing problem that I have reported consistently and has been a serious issue since August . . ..

(ECF No. 36-3, p. 71).

While Plaintiff's October 29, 2022, kiosk submission identifies the "Washington County Sheriff's department for their failure to ensure reliable access to the law library, mail, email, visitation, medical services, grievances and all other services which Summit is contracted with the sheriff's department to provide," (ECF No. 36-3, p. 67), the grievance does not name any of the defendants later identified to this claim.   Further, to the extent this grievance is against WCDC's policy of contracting with Summit, Inc. to provide detainees' access to their personal mail, this grievance does not satisfy the WCDC grievance procedure because it does not specify the approximate date and time (or when) he could not access the WCDC kiosk/tablet system to view his personal mail.

For the reasons described above, this Court does not find that Plaintiff's November 21, 2022, grievance (ECF No. 36-3, p. 81) satisfies either the WCDC grievance procedure or Section 1997e(a)'s exhaustion requirement.   Perhaps in recognition of this, Plaintiff points to the paper

grievances he submitted and the letters he wrote detailing his grievances against the WCDC and certain WCDC officials. *See* (ECF No. 75). Regardless of their content, however, these letters and paper grievances plainly do not satisfy the WCDC grievance procedure which requires grievances to be submitted on the *kiosk*. (ECF No. 36-5). Although Plaintiff has documented that he complained about the tablets and the kiosks and WCDC policies, this Court agrees that Plaintiff did not properly exhaust his administrative remedies with respect to claim one in the defendants' individual capacities, and as to claims two and three in both the defendants' individual and official capacities.

### B. "As Available"

This finding does not end the analysis. As the Supreme Court has explained, "the PLRA contains 'its own, textual exception'" to the exhaustion requirement. *Smith v. Andrews*, 75 F.4th 805, 808 (8th Cir. 2023) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). "[A]n inmate is required to exhaust those, but only those grievance procedures that are available, i.e., capable of use to obtain some relief for the action complained of." *Id.* (cleaned up). "As relevant here [there are] three kinds of circumstances in which an administrative remedy may be unavailable." *Id.* (internal citation omitted). "Those situations are (1) when the procedure operates as a simple dead end; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' and (3) when prison administrators deliberately thwart prisoner attempts to use the process." *Id.* (internal citations omitted).

Plaintiff contends that "[d]ue to kiosk outages, tablet hoarding, and the [WCDC] staff's failure to provide or refusal to provide paper grievances, [he] often wrote directly to the Defendants about the issues addressed in this case." (ECF No. 75, p. 1). Thus, this Court considers whether

the WCDC grievance procedure was incapable of use because it required him to submit grievances on a frequently non-operational and/or unavailable tablet/kiosk system.

Plaintiff has offered evidence demonstrating that he submitted paper grievances dated September 6, 2022, November 10, 2022, November 29, 2022 (ECF No. 75, p. 8, 26, 29); and mailed letters to the following persons:   Defendant Denzer (dated January 15, 2022 and February 8, 2022); Defendant Mulvaney (dated March 31, 2022); Defendant Cantrell (dated January 15, 2022, and February 8, 2022); Defendant Ake (dated September 5, 2022); and Defendant A. Arnold (dated September 5, 2022).   (ECF No 75, pp. 12, 13, 14, 21, 22, 24, 25). (ECF No. 75, p. 25).

As previously noted, the WCDC grievance procedure requires detainees to submit a grievance on the kiosk.   Thus, neither these letters nor the paper grievances – regardless of their substance – satisfy the WCDC grievance procedure.[13]   Further, contrary to Plaintiff's contention, these letters and grievances do not establish a material fact dispute about whether the WCDC grievance policy was "incapable of use."   Even where there were kiosk/tablet service interruptions at WCDC, the record establishes that after service was restored, Plaintiff did not properly grieve either the service interruption itself or the fact that the service interruption precluded him from accessing printed materials, the daily newspaper, his mail, and/or submitting medical requests.

As examples, the record shows that Plaintiff submitted a paper grievance on September 6, 2022 (ECF No. 75, p. 26), and that he sent letters to Defendants Ake and A. Arnold dated September 5, 2022. (ECF No. 75, pp. 24-25)   The record also reflects that on September 7, 2022, Plaintiff submitted an electronic grievance saying, "I have been deprived of daily news for 7 of

---

[13] Because the WCDC grievance procedure clearly requires detainees to submit grievances on the "kiosk," (ECF No. 36-5, p. 1), Plaintiff's "paper grievances" do not satisfy the WCDC grievance procedure even though they may have been added to his "inmate file." (ECF No. 75, p. 11).

the last 8 days due to the failure of the department to maintain an operational kiosk system."   (ECF No. 36-3, p. 56).   To the extent there was a service interruption from September 5-6, 2022, which prompted Plaintiff to send letters to Defendants Ake and A. Arnold on September 5, 2022, and submit a paper grievance on September 6, 2022, the interruption was resolved by September 7, 2022, providing Plaintiff a timely opportunity to submit a grievance on the kiosk in compliance with WCDC policy.   Indeed, Plaintiff submitted a kiosk grievance; the failure here is not submission but that Plaintiff failed to comply with WCDC grievance procedure by failing to specifically name anyone involved.

Plaintiff suggests he submitted a paper grievance on November 29, 2022 (ECF No. 75, p. 28),[14] but the summary judgment record shows he submitted an electronic grievance the very next day, on November 30, 2022. (ECF No. 36-3, p. 85). Similarly, while Plaintiff sent letters dated January 15, 2022, (ECF No. 75, pp. 12, 21), he submitted an electronic grievance on January 21, 2022.   (ECF No. 36-3, p. 4).   Finally, he sent a letter dated March 31, 2022, (ECF No. 75, p. 14), but he also submitted an electronic grievance on April 12, 2022. (ECF No. 36-3, p. 35). Even if the tablet/kiosk system was non-operational on November 29, 2022, January 15, 2022, or March 31, 2022, that system was restored by at least November 30, 2022, January 21, 2022, and April 12, 2022, respectively.   On each of those days, Plaintiff had opportunity to submit a timely grievance about the service interruption, and the effect of that interruption on his access to printed materials, his personal mail, and/or medical requests.   Nevertheless, despite opportunity, Plaintiff's

---

[14] In support of his opposition to County Defendants' Motion for Partial Summary Judgment, Plaintiff submitted a letter he received from a friend who apparently obtained a copy of his discovery materials and reported that these materials include a paper grievance dated November 29, 2022.   (ECF No. 75, p. 28).

grievances simply do not comply with WCDC policy.

It is important to point out that WCDC grievance procedure does not require Plaintiff to submit a grievance the same day as the event giving rise to the grievance; instead, the policy affords him ten (10) days.   Here, Plaintiff has submitted no evidence creating a genuine fact dispute that he was unable to submit a properly specific grievance about WCDC tablet/kiosk service interruptions in accordance with WCDC policy within ten (10) days of the service interruption ending.[15]   *See Smith v. Andrews*, 75 F.4th 805, 809 (8th Cir. 2023) (grievance procedure incapable of use where "(1) the inmate was unable to file a timely grievance due to physical or mental incapacity; and (2) the administrative system's rules do not accommodate the condition by allowing a late filing") (citing *Rucker v. Griffen*, 997 F.3d 88, 94 (2d Cir. 2021) (concluding that "grievance procedures were 'incapable of use' because the plaintiff was hospitalized for over a month but any failure to file a grievance within five days . . . would render it untimely").

Accordingly, County Defendants' Motion for Partial Summary Judgment on the Issue of Exhaustion (ECF No. 34) should be **GRANTED**.   Specifically, with respect to claims two and three, Plaintiff's claims against County Defendants A. Arnold, Denzer, Mulvaney, Cantrell, Denzer, Ake, and East should be dismissed without prejudice.   Similarly, with respect to claim one, Plaintiff's claims against County Defendants Cantrell, Denzer, Ake, East, and Mulvaney – in

---

[15] While Plaintiff also submitted a paper grievance on November 10, 2022, (ECF No. 75, p. 8), he filed an electronic submission on the kiosk that same day. (ECF No. 36-3, p. 72). Similarly, although Plaintiff sent letters dated February 8, 2022, (ECF No. 75, pp. 13, 22), he also submitted a grievance that same day. (ECF No. 36-3, p. 7). Clearly, the tablet/kiosk system was not "incapable of use" for Plaintiff to submit a grievance in compliance with the WCDC grievance policy on November 10, 2022, or on February 8, 2022.   For the reasons described above, the grievances Plaintiff submitted on the kiosk on those days simply do not satisfy the WCDC grievance policy.

their individual capacities – should also be dismissed without prejudice.  *See Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015) (dismissal without prejudice mandatory where plaintiff did not exhaust his administrative remedies in accordance with 42 U.S.C. § 1997e(a)).

## C.  Request to Stay

The undersigned recommends that County Defendants' Motion for Partial Summary Judgment on the Issue of Exhaustion be granted, in full, which leaves remaining for litigation only Plaintiff's claim one against Defendants Cantrell, Denzer, Ake, East, and Mulvaney in their **official capacities**.  The Defendants request that this claim be stayed on the grounds that it is similar to Plaintiff's First Amendment claims in *Scharnhorst v. Cantrell*, 5:22-CV-5138-TLB (W.D. Ark.).  (ECF No. 34, p. 3).  Plaintiff did not explicitly respond to this request. (ECF No. 75).

To the extent the County Defendants contend Plaintiff's remaining claim is duplicative of the claims Plaintiff asserts in *Scharnhorst*, 5:22-CV-5138, Defendants may raise this issue on separate motion, affording notice to Plaintiff as well as an adequate opportunity to respond.   The County Defendants' current request to stay these proceedings – included in their Partial Motion for Summary Judgment – should be **DENIED WITHOUT PREJUDICE**.

## IV. CONCLUSION

In sum, for the reasons described above, the undersigned **RECOMMENDS THAT**:

(1)     Separate Defendant Giertz' Motion to Dismiss (ECF No. 53) be **GRANTED** and Separate Defendant Giertz be **TERMINATED** as a defendant to this action.

(2)     The County Defendants' Motion for Partial Summary Judgment on the Issue of Exhaustion (ECF No. 34) be **GRANTED** as follows:

(a)    As a result, Plaintiff's Claims two and three against County Defendants A. Arnold, Denzer, Mulvaney, Cantrell, Denzer, Ake, and East in their **official** and **individual** capacities be **DISMISSED WITHOUT PREJUDICE** for failure to properly exhaust administrative remedies.

(b)    As a result, Plaintiff's Claim one against County Defendants Cantrell, Denzer, Ake, East, and Mulvaney in their **individual** capacities be **DISMISSED WITHOUT PREJUDICE** for failure to properly exhaust administrative remedies.

(3)    The County Defendants' request to stay these proceedings as to claim one against County Defendants Cantrell, Denzer, Ake, East, and Mulvaney in their **official capacities** pending the outcome of *Scharnhorst v. Cantrell*, 5:22-CV-5138-TLB (W.D. Ark.) be **DENIED WITHOUT PREJUDICE**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**STATUS OF REFERRAL:**    Plaintiff's Claim One against County Defendants Cantrell, Denzer, Ake, East, and Mulvaney in their official capacities survives and referral remains in place.

**RECOMMENDED** this 8th day of July 2024.

*Christy Comstock*

CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

44